STATE, THE INHABITANTS OF THE TOWNSHIP OF MARL-
BORO', PROSECUTORS, v. SAMUEL F. VAN DERVEER
ET AL., TOWNSHIP COMMITTEE OF ATLANTIC TOWN-
SHIP.

1. The description of a public road given in an act of legislation as the boundary of townships created by said act, is sufficiently certain when used in the preliminary proceedings to divide and assign said road between the adjoining townships for repairs.
2. Where doubt exists as to the true location of such road it may be determined by long public user.

On *certiorari*. In matter of road.

Argued at February Term, 1885, before Justices KNAPP and PARKER.

For the prosecutors, *William H. Vredenburgh*.

For the defendants, *J. Clarence Conover*.

The opinion of the court was delivered by

KNAPP, J.   The proceedings sent up with the writ were taken under the provisions of the sixty-second and sixty-third sections of the Road act, (*Rev.*, p. 1008,) to divide, assign and set off to the townships of Atlantic and Marlboro', in Monmouth county, their several shares and portions of the public road which divides said townships, and to determine the part which each shall work, maintain and keep in order.   The provisions of this legislation may be thus summarized : when a public road divides two townships, the town committee of either, on thirty days' notice to the other, may make application to the Common Pleas of the county in which the townships are, for the appointment of commissioners to ascertain and determine the part or portion of the public highway which shall be kept by each of the townships ; the court then appoints three commissioners, not inhabitants of either township, to set off to each its just share and portion of said road for that purpose ; the commissioners, upon taking the prescribed oath, are required to give ten days' notice to the clerk of each of the said townships of the time and place when and where they will meet to perform their duties ; when met at such time and place, or at an adjourned meeting, they are directed to proceed and examine the road, and to divide and assign to each of said townships its proportion, and they are required to cause the line of division and assignment to be marked so far as can conveniently be done ; to make a map, survey and description, and file the same, with their oath of office, with the clerk of the Common Pleas.   After said assignment each of the said townships is required to care for the share or portion of the road so assigned to it, in the same manner and under the same penalties as are prescribed by law for the care of public highways wholly within the townships.

The township of Marlboro' was set off from the township of Freehold by an act passed February 17th, 1848.   *Pamph. L.*, p. 48.   Part of its easterly and southerly boundaries were upon the northerly and westerly boundaries of the town-

ship of Atlantic. It is upon this line given that the part of the township of Marlboro' mentioned abuts.

The township of Atlantic was created out of parts of Shrewsbury, Freehold and Middletown, by an act passed February 18th, 1847. *Pamph. L., p.* 66. That part of the boundary line of the township of Atlantic, as described in the act, material for us, is as follows: "From the beginning point, as described, running northerly until it comes to the mouth of the road that leads through Jacob Conover's farm; thence, northerly, following the middle of said road until it comes to the road near Hulse's house, which road leads to John J. Ely's mills; thence, easterly, following the middle of said road until it strikes Middle Top brook." A public road was opened and in use for public travel at the time of the passage of both these acts, which fully met the description given of the Atlantic boundary lines, and there would seem to be no room for doubt that to this road, so opened and used, the legislation creating these townships referred, and this road became by law the established boundary line between Marlboro' and Atlantic. Now, it would appear that in all matters of procedure to divide the road between the townships, the law has been pursued, unless the objections made by the prosecutor present a failure therein. The prosecutor objects. in the first two reasons that in the notice of the application to the court, in the application itself, in the order of the court appointing the commissioners, and in the notice of the meeting of the commissioners to make division, the road to be divided was not specified with sufficient legal certainty.

In each of these documents the road to be apportioned between the townships is described as "the public road or highway dividing the townships of Atlantic and Marlboro'." The prosecutors insist that the beginning point and the ending point and the course of the road should have been described. The statute does not, in terms, require such particularity in description. But, it is said, this proceeding is so analogous to those for laying out public highways, which require the detailed description here contended for, that the same should be

demanded in this.   Very different reasons are operative in
the two cases.   In the laying out of roads, or in their vaca-
tion, property rights are to be affected; and there is every
reason for requiring such particularity in description as shall
give notice to those who are to be affected.   In this procedure
no property rights are involved, and no change is to be made
which can concern individual proprietors.   It is entirely a
matter of municipal interest.   The description should be
sufficient to indicate to the respondent township the subject
matter involved in the controversy.   Here it is "the public
road which divides these two townships."   What that road
is, is declared and described by public law, and in a way
which the legislature deemed sufficiently certain for all public
purposes; and all persons representing townships or other
municipal bodies are presumed to know the territorial boun-
daries.   This application is not for the assignment of a par-
ticular part of the highway boundary.   In such case, doubt-
less, the parts should be described, but it is for all the road
dividing the two townships, and such designation is legally
certain.

In the return made by the commissioners of the share
allotted to each township, particularity of description such as
indicates to each the part of the road to be cared for by it, is
necessary, and in this case no objection is or could successfully
be made to the sufficiency of such description.   I think, there-
fore, there is no force in this objection.

The third reason assigned is, that no proof was made to the
court that the two townships were divided by a public road,
or by what road, and that no adjudication by the court was
had upon those subjects before appointing commissioners.   By
statute the basis of this proceeding is the existence of a public
road dividing two townships, but why should proof be made
before the court of the existence of a condition of things
established and declared by positive law?   Of such matters
the court must take judicial notice and no other proof is
requisite.   *Whart. on Law of Ev.*, § 339.   No adjudication
of the court was necessary to determine that these townships

were divided by a public highway. Adjudication implies the settlement of matters which are undetermined. Here the court, in the face of a law creating this road a township boundary, could not have adjudicated it to be otherwise, as the matter stood upon the petition. If the presumed continuance of the road made a boundary was to be brought in issue, it was for the respondent township to assert and show its vacation, or other determination of its existence.

The fourth and fifth reasons are rested upon the averred fact that some portion of the road embraced in the assignment to each of these townships was entirely within the limits of the other township. This reason is made to rest upon the assumption that the road as opened and in public use before the establishment of either of these townships, and so continuing until the present time, is not the boundary line separating the two municipal divisions. To support this the return of surveyors of the highways laying out a public road in 1837 is introduced. By that return a road is established which, it is admitted, is in the main co-incident with a large part of the road divided by the commissioners; but of recent surveys made of the line in the return some show deviations from the road as opened and used. But this proves nothing to the purpose. Highways, within the meaning of the Road act, may exist as well by long user as by the act of surveyors in laying them out. *Smith* v. *State*, 3 *Zab.* 130; *S. C., on error*, 3 *Zab.* 712; *State* v. *Snedeker*, 1 *Vroom* 80; *Ward* v. *Folly*, 2 *South.* 482; *Holmes* v. *Jersey City*, 1 *Beas.* 299.

The evidence shows that this road as now used has been subject to the public easement for at least forty years, and was so at the time of the establishment of the boundary line between these two townships, and to this road, as before remarked, the legislation mentioned referred as the boundary. Since the creation of these townships the respective municipal authorities have recognized the traveled and used highway as their dividing line. It was the only avenue of public travel there, and public policy required that it should be kept in

order for proper use. There is no authority under these proceedings to determine upon errors in the location of a road dividing townships, and neither commissioners nor the Common Pleas have power or right to interfere with such highway as it is found open and in use.

When an assignment is made between the townships, each has the same power over the part assigned to it that is given by law over roads entirely within its territory. The right to remove encroachments, or to do any other act within the scope of its general power over highways, exists in the control of roads assigned under these proceedings. If these be not sufficient to correct manifest errors in location, the statute has provided another method for the due correction of mistakes, of which either township may avail itself. The design of the provision which is the groundwork of this proceeding, is practically to secure the making and repairs of roads which, until allotted under the act, have no claim to be kept or cared for by any organized authority, and must remain without any public control. It is the interest of public travel that is chiefly involved in these measures, and that interest is only subserved by properly maintaining the actual existing avenues provided for it. It is not designed to admit that the road as opened is not a correct location of the road as laid in 1837. A large amount of testimony was taken on the one side to show the identity of the two, and on the other a disagreement. Upon examination of that testimony we strongly incline to the belief that the roads as laid and open are the same, but we do not discuss that testimony, because if the view taken of this matter be correct, its consideration is unnecessary. It is enough to say upon this subject that if the road laid out in 1837 was designed by the legislature to be the boundary line, and the correctness of the location be a matter in doubt as well as of dispute, the long-continued recognition of these parties and the general public of the road opened as the true line, would raise the presumption that it was such. Where a line called for by legislative act cannot be traced, the line

as practically located will be presumed to be the true one. *Freeholders of Union* v. *Essex,* 14 *Vroom* 391.

The prosecutor has failed to lay ground for impeaching these proceedings and they should be affirmed, with costs.